719 A.2d 242

COMMONWEALTH of Pennsylvania, Appellee,

v.

**David COPENHEFER, Appellant.**

Supreme Court of Pennsylvania.

Submitted Jan. 28, 1998.

Decided Oct. 5, 1998.

Reargument Denied Dec. 10, 1998.

288

Kim Wm. Riester, Pittsburgh, for D. Copenhefer.

James K. Vogel, Erie, Robert A. Graci, Harrisburg, for Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

### OPINION OF THE COURT

CASTILLE, Justice.

In this direct appeal from the denial of his petition filed pursuant to the Post Conviction Relief Act, 42 Pa.C.S. § 9541, *et seq.* ("PCRA"), appellant alleges that his trial and previous appellate counsel were ineffective, that the Commonwealth violated the dictates of *Brady v. Maryland*,[1] and that prison authorities violated his Sixth Amendment rights by intercepting his mail. For the reasons set forth below, we find that appellant is not entitled to relief and we affirm the ruling of the PCRA court upholding appellant's sentence of death.

In March 1989, following a jury trial, appellant was convicted of first-degree murder, kidnapping, unlawful restraint, attempted robbery, and terroristic threats for his killing of Sally Weiner in June 1988.[2] Pursuant to 42 Pa.C.S. § 9711(d),

---

1. 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

2. Appellant also received consecutive sentences of ten to twenty years for kidnapping, two and one-half to five years for unlawful restraint,

the jury found two aggravating circumstances: that the victim was held by the defendant for ransom or reward,[3] and that the defendant committed the killing while in the perpetration of a felony.[4] The jury found no mitigating circumstances and, as required by 42 Pa.C.S. § 9711(c)(1)(iv), appellant was sentenced to death. Post-verdict motions were heard and denied.

On direct appeal, this Court sustained appellant's conviction and judgment of sentence and found sufficient evidence to support his conviction and the jury's finding of aggravating circumstances. *Commonwealth v. Copenhefer,* 526 Pa. 555, 587 A.2d 1353 (1991). The Court summarized the facts giving rise to appellant's conviction as follows:

On June 16, 1988, the victim, Sally Weiner, received a telephone call purporting to be from a congressman's office asking that she meet with the caller to discuss arrangements for the presentation of a civic award to her husband, to which she agreed. The next day, around noon, she drove to the designated meeting place, parked her car, and was never seen alive again. Several hours later, her husband, Harry, manager of the Corry, Pennsylvania office of Pennbank, received a telephone call playing a recorded message from his wife explaining that she had been kidnapped and that the kidnapper demanded ransom money from the bank. Mr. Weiner was directed to retrieve a duffel bag from the parking lot outside his bank; the bag contained additional threats and instructions. Mr. Weiner called a vice-president of the bank, as well as the bank's security office, local police, state police, and the FBI. Mr. Weiner never received the additional radio instructions necessary to follow the directions contained in the duffel bag and therefore could not comply with the kidnapper's demands. Two days later, on July 19, 1988, Sally Weiner's body was discovered in a rural area north of her home. She had died as a result of a single gunshot wound to the back of her head.

five to ten years for attempted robbery, and two and one-half to five years for terroristic threats.

3. 42 Pa.C.S. § 9711(d)(3).

4. 42 Pa.C.S. § 9711(d)(6).

Initial investigations by the FBI, state police, and local police resulted in the discovery of a series of computer-generated notes and instructions, each one leading to another, which had been concealed at various hiding places in and around Corry. The investigation also produced several possible suspects, including appellant, who owned a nearby bookstore, who had experienced unproductive transactions with Mr. Weiner's bank, and who had a negative personal relationship with the Weiners.

An examination of trash discarded from appellant's bookstore revealed drafts of the ransom note and the ransom directions. Subsequent search warrants resulted in the seizure of an array of remarkably comprehensive evidence against appellant. This included evidence tying appellant's fingerprints, computer, weapons and ammunition, clothing, automobile, and materials from his home and office to both the victim and the murder site.

Appellant's fingerprints appeared on the original ransom note and on some of the hidden notes. Police discovered rough drafts of the ransom note, a map of the hidden notes, and notes and directions in appellant's handwriting, some of which bore his fingerprints. Appellant had a collection of guns; ballistics evidence established that two of these could have been used to kill the victim. He also had "glazier" ammunition, a nonstandard composition bullet designed to fragment on impact after entering a body, the same type used to murder the victim. A metal rod traced to his home had been used to secure one of the hidden notes. Crepe paper from a roll found at his store had been used to help secure another note. Human female skin tissue was found on his clothing. Tread marks matching appellant's automobile tires were found at one hiding place and at the murder scene. Finally, appellant's computer contained a series of drafts and amendments of the texts of the phone call to Mr. Weiner, the ransom note, the series of hidden notes, and a twenty-two point plan for the entire kidnapping scheme. On direct appeal, this Court unsurprisingly concluded that the above-

related facts were sufficient to support the conviction and sentence of death.

In November 1993, appellant filed a *pro se* petition for post-conviction collateral relief. Counsel was appointed and in January 1994, appellant filed an amended petition pursuant to the PCRA. On October 3, 1994, a full evidentiary hearing was held to consider the amended PCRA petition. On June 30, 1997, the PCRA court entered an Order denying the petition. Pursuant to 42 Pa.C.S. § 9546(d), this Court has exclusive and automatic jurisdiction to review the PCRA court's ruling upholding the sentence of death.

Under the version of the PCRA at issue here,[5] appellant must satisfy the following requirements to be eligible for relief:

(a) General rule. To be eligible for relief under this subchapter, a person must plead and prove by a preponderance of the evidence all of the following:

. . . .

(2) That the conviction or sentence resulted from one or more of the following:

(i) A violation of the Constitution of Pennsylvania or the laws of this Commonwealth or the Constitution of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

(ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

. . . .

(3) That the allegation of error has not been previously litigated and that one or more of the following applies:

5. Since appellant's PCRA filing pre-dated the November 17, 1995 amendments to the PCRA, the standards set forth below are drawn from the version of the PCRA that existed prior to the 1995 amendments. *See Commonwealth v. Whitney*, 550 Pa. 618, 708 A.2d 471 (1998).

(i) The allegation of error has not been waived.

(ii) If the allegation of error has been waived, the alleged error has resulted in the conviction or affirmance of sentence of an innocent individual.

(iii) If the allegation of error has been waived, the waiver of the allegation of error during pretrial, trial, post-trial or direct appeal proceedings does not constitute a state procedural default barring federal habeas corpus relief.

42 Pa.C.S. § 9543(a)(2) and (3)(1988).

## I. *INEFFECTIVE ASSISTANCE OF COUNSEL*

 Appellant raises a plethora of claims that fall under the rubric of ineffective assistance of counsel. The standard of review for such claims is well-settled. A criminal defendant sustains a claim of ineffectiveness of counsel by proving by a preponderance of the evidence: (1) that the underlying claim is of arguable merit; (2) that counsel's performance had no reasonable basis; and (3) that counsel's ineffectiveness worked to his prejudice. *Commonwealth v. LaCava*, 542 Pa. 160, 178, 666 A.2d 221, 229 (1995)(citing *Commonwealth v. Edmiston*, 535 Pa. 210, 237, 634 A.2d 1078, 1092 (1993)). Assuming appellant can establish counsel's ineffectiveness through the three-pronged test set forth above, appellant must then demonstrate under the PCRA that the ineffective assistance of counsel "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." [6]

 Trial counsel's assistance is deemed constitutionally effective if the particular course chosen by counsel was rea-

---

**6.** The issue of whether the additional statutory requirement imposed by the PCRA violates the Sixth Amendment's guarantee of effective assistance of counsel is currently pending before this Court in *Commonwealth v. Kimball*, 453 Pa.Super. 193, 683 A.2d 666 (1996), *alloc. granted*, 548 Pa. 615, 693 A.2d 587 (1997). However, all of appellant's ineffective assistance claims fail without resort to the additional burden imposed by the PCRA. Therefore, the outcome in *Kimball* has no bearing upon the issues raised by appellant. *See Commonwealth v. Lark*, 548 Pa. 441, 459, 698 A.2d 43, 52 (1997)(resolution of constitutionality of PCRA ineffectiveness standard deemed unnecessary if claims fail under common law ineffectiveness standard).

sonably designed to effectuate his client's interests. *Commonwealth v. Pierce*, 515 Pa. 153, 158, 527 A.2d 973, 975 (1987). The law presumes that trial counsel was not ineffective. *Commonwealth v. Miller*, 494 Pa. 229, 431 A.2d 233 (1981). A claim of ineffective assistance will not be deemed waived so long as appellant has "layered" the claim by alleging the ineffective assistance of all of his previous counsel for failing to pursue it. *See Commonwealth v. Chmiel*, 536 Pa. 244, 250, 639 A.2d 9, 12 (1994).[7]

First, appellant alleges that appellate counsel on direct appeal was ineffective for failing to argue that the trial judge erred by declining to grant trial counsel the opportunity to "life-qualify" the jury during the general voir dire. Specifically, appellant argues that the trial judge erred by declining to allow trial counsel to ask the following question: "Do you believe that a death penalty verdict should occur in every case where the defendant is found guilty of first-degree murder." However, the trial court rejected the question proffered by trial counsel, not on the basis that life-qualifying of jurors was impermissible, but rather on the basis that the question itself was overbroad, ambiguous, and meaningless to jurors, since they had not yet been furnished a definition of "first-degree murder." Trial counsel did not attempt to amend the question after this ruling. Therefore, the claim that appellant now raises must be construed as a claim that appellate counsel was ineffective for failing to argue trial counsel's ineffectiveness for failing to seek to life-qualify jurors in a proper fashion. It is well-settled in this Commonwealth that although trial counsel is permitted to attempt to life-qualify jurors, counsel will not be deemed ineffective for failing to seek to do so. *Commonwealth v. Hardcastle*, 549 Pa. 450, 454–56, 701 A.2d 541, 543 (1997); *Commonwealth v. Blount*, 538 Pa. 156, 647 A.2d 199 (1994). Thus, trial counsel was not ineffective for his omission in this regard, and appellate counsel was not ineffective for failing to pursue a frivolous claim of trial counsel's ineffectiveness. Moreover, the record reveals that during the

7. All of the ineffectiveness claims presented by appellant herein have been properly "layered" and are thus preserved for this Court's review.

individual voir dire, trial counsel did have the opportunity to life qualify jurors on an individual basis. Thus, any putative ineffectiveness stemming from trial counsel's failure to properly life-qualify the jurors during the general voir dire was transparently non-prejudicial. Therefore, appellant's first claim of ineffective assistance fails under all of the relevant tests.[8]

Next, appellant alleges that trial counsel was ineffective for failing to object to the prosecutor's commenting on what appellant now mischaracterizes as his post-arrest silence. The prosecutor commented that although appellant waived his Fifth Amendment right to remain silent and freely chose to speak with police regarding his activities on the dates in question, he invoked his right to remain silent only when asked specific questions concerning his whereabouts on June 17, 1988, the day of the kidnapping, indicating that he would prefer not to answer that particular question before consulting with counsel.[9]

**8.** Appellant also alleges that trial counsel was ineffective for failing to ask a number of other questions relating to the ability of prospective jurors to understand and follow the procedures employed at the penalty phase. This claim, which appellant cites no law to support, likewise merits no relief.

**9.** Appellant refers to several record excerpts to support his claim that the prosecutor improperly commented on his post-arrest silence, of which the following are most pertinent:

PROSECUTOR: And you freely talked to them on a number of occasions about what you did Friday night, Saturday morning, Saturday afternoon of the 18th and all day Sunday and Saturday night?
APPELLANT: I answered all the questions they—basically I answered all the questions they asked.
Q: But on two occasions you said, "I'm not going to tell you what I did Friday afternoon," isn't that true?
A: I told them I wanted to speak—I wanted to speak to an attorney before that, which I have the right to do, and I wanted to do that before I talked to them about that part of Friday.
Q: I agree you have a right to do that, but you told them on all instances everything else about that weekend, but you told them "I'm not going to tell you about Friday afternoon," isn't that true?
A: That's correct, at that time I didn't want to.
T.T. Day # 14 at 73–74.

During his summation, the prosecutor commented as follows:
... [H]e freely talked to them about what he did Friday night, and what he did Saturday morning, and what he did Saturday afternoon,

 In general, after a defendant has been given *Miranda* warnings, the defendant's post-arrest silence may not be used against him to impeach an explanation subsequently offered at trial. *See Greer v. Miller,* 483 U.S. 756, 763, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987) (citations omitted). However, where a prosecutor's reference to a defendant's silence is a fair response to a claim made by defendant or his counsel at trial, there is no violation of the Fifth Amendment privilege against self-incrimination. *See United States v. Robinson,* 485 U.S. 25, 32, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988)(reference made to defendant's silence at trial was fair because it was a legitimate response to claims made by defendant's counsel). The protective shield of the Fifth Amendment may not be converted into a sword that cuts back on an area of legitimate inquiry and comment by the prosecutor on the relevant aspects of the defense case. *Id.* (citing *United States v. Hasting,* 461 U.S. 499, 516, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983)).

 Here, the statements made by the prosecutor regarding appellant's post-arrest silence constituted a fair response to the following portions of appellant's testimony elicited on direct examination:

DEFENSE COUNSEL: And you did agree to talk to [the police] at that point in time, correct?

APPELLANT: Yes.

Q: Did you understand that you had a right to remain silent?

A: Yes.

Q: And that you could have an attorney present?

A: Right.

Q: Why did you choose to speak to them?

A: Why not? **I didn't have anything to hide**, I might as well.

and what he did Sunday, but do you recall the different occasions when he said that I'm not going to tell you what I did Friday afternoon, I'm not going to discuss with you what I did Friday afternoon. And the reason why is because that's when he killed her. . . .

T.T. Day # 15 at 172–73.

. . . .

Q: And what did the conversation relate to basically, if you recall?

A: **Everything**. They wanted to know **where I was Friday**, where I was Saturday, where I was Sunday, asked all kinds of questions about all kinds of—of everything, a lot of background and—and all that kind of thing. I mean, it was a couple hours of just, you know, vigilance through the whole—whole list of questions.

*See* T.T. Day # 14 at 18–19 (emphasis added).

In this testimony, appellant clearly states that he cooperated with the police because he had nothing to hide, and further insinuates that everything the police believed to be relevant— the "whole list of questions"—was included in the "conversation" between appellant and the police. This testimonial assertion simply did not reflect the reality of appellant's selective non-responsiveness to certain highly relevant questions, and the prosecutor properly pointed this out by confronting appellant with his invocation of silence in response to the question pertaining to Friday, June 17. Appellant may not assert to a jury that on the one hand he was entirely cooperative with investigators but on the other hand not place before that same jury the fact that he belatedly invoked his right to remain silent to refuse to answer the most incriminating questions put to him. Not only would such a situation be misleading to the factfinder, but it would allow appellant to convert the Fifth Amendment shield into a sword which could not be countered by the prosecutor's further inquiry or fair comment thereon. Accordingly, we find that the prosecutor's comments were a "fair response to a claim made by defendant or his counsel;" thus, the comments did not violate appellant's Constitutional rights.

Next, appellant asserts that trial counsel was ineffective for failing to seek suppression of post-arrest statements made by appellant in the District Attorney's Office on the basis that he did not give a knowing and voluntary waiver of his Fifth Amendment rights before making these statements. Specifi-

cally, appellant claims that he only waived his right to counsel on the condition that no questions would be posed with respect to the pending murder charge, but that he was subsequently hoodwinked into making statements relevant to the pending charges when the district attorney asked the question that appears at the end of the following excerpt:

> ... When Mr. Copenhefer was in our office he was talking about discussions that other prisoners made regarding essentially teaching people how to commit crimes up in the jail, how to hotwire cars, how to do things of that nature. Mr. Copenhefer was asked during the course of that conversation: "Did you ever do anything like that? Did you ever give any talks like that?"

■ On direct appeal, this Court addressed the argument that appellant's waiver was rendered unknowing and involuntary by the above-referenced question. *See Copenhefer, supra,* 526 Pa. at 564, 587 A.2d at 1357. Therefore, this argument has been previously litigated for purposes of the PCRA and will not be addressed further. *See* 42 Pa.C.S. § 9543(a)(3); *Commonwealth v. Whitney,* 550 Pa. 618, 629, 708 A.2d 471, 476 (1998) (an appellant cannot obtain post-conviction review of claims previously litigated on appeal by alleging ineffective assistance of prior counsel and presenting new theories of relief to support previously litigated claims).

■ Appellant next avers that trial counsel was ineffective for failing to object to testimony that appellant misspelled the word "exactly" as "exactely" at a post-arrest handwriting sample session, just as he had on an extortion note. Appellant now insists that authorities told him to misspell the word in this manner during the handwriting session. However, the PCRA court found as a fact that appellant never informed trial counsel of his allegation that he had been instructed to misspell this word. *See* Opin. at 250. Appellant does not attempt to explain why this factual finding is flawed. Therefore, trial counsel was not unreasonable for failing to pursue a claim when he had no reason to be aware of the claim.

 Next, appellant argues that trial counsel was ineffective for failing to move to disqualify the prosecutor on the basis that he was a potential corroborating witness to inculpatory statements made by appellant to other inmates about how to effectuate certain types of execution-style killings. This claim has no merit, since neither party sought to call the prosecutor as a corroborating witness to such statements. In any event, appellant fails to allege, much less prove, that he was unfairly prejudiced by the prosecutor's continuing involvement in this matter. Therefore, this claim of ineffective assistance fails.

 Next, appellant alleges that trial counsel was ineffective for failing to object to comments by the prosecutor that allowed the jury to infer that appellant was incarcerated prior to trial. Appellant suggests that the jury could have inferred his involvement in prior unrelated criminal misconduct solely because he was incarcerated prior to trial, and argues that a cautionary instruction at the very least was called for. Appellant provides no factual support whatsoever for his bald assertion that the jury imputed prior unrelated criminal misconduct based on the references to his pre-trial incarceration, much less factual support which establishes by a "preponderance of the evidence" that the jury imputed such prior criminal misconduct. *See* 42 Pa.C.S. § 9543(a). In any event, trial counsel may reasonably decline to request a limiting instruction with regard to prior criminal misconduct where such an instruction might have served to emphasize what might otherwise have gone relatively unnoticed by the jury. *See Commonwealth v. Billa*, 521 Pa. 168, 183, 555 A.2d 835, 843 (1989). Therefore, appellant cannot establish that trial counsel was ineffective for failing to object to the complained-of references.

 Appellant next raises a series of arguments all geared toward establishing appellate counsel's ineffectiveness for failing to properly challenge the trial court's suppression rulings which resulted in the admission of evidence stemming from the seizure of appellant's computer.[10] Appellant has already

10. Among other things, appellant now argues that the evidence seized from his computer was never properly authenticated and that the

argued on direct appeal, as he attempts to argue now, that the retrieval of documents from his computer violated his Fourth Amendment rights. Therefore, this argument has been previously litigated for purposes of the PCRA and will not be addressed further. *See* 42 Pa.C.S. § 9543(a)(3); *Commonwealth v. Whitney*, 550 Pa. at 629, 708 A.2d at 476 (an appellant cannot obtain post-conviction review of claims previously litigated on appeal by alleging ineffective assistance of prior counsel and presenting new theories of relief to support previously litigated claims).

Appellant's next argument is that trial counsel was ineffective for failing to call an expert witness to dispute the theory proffered by the Commonwealth's expert with regard to time of death. Appellant avers that time of death is important because as of 5:00 p.m. on July 17, he had an alibi (his wife) and therefore could not have committed the murder if it occurred after 5:00 p.m. Trial counsel need not introduce expert testimony on his client's behalf if he is able effectively to cross-examine prosecution witnesses and elicit helpful testimony. *Commonwealth v. Williams*, 537 Pa. 1, 29, 640 A.2d 1251, 1265 (1994)(citing *Commonwealth v. Clemmons*, 505 Pa. 356, 479 A.2d 955 (1984)). The Commonwealth's own entomologist had testified that the time of death was between 5:00 p.m. and 8:00 p.m. on July 17, 1988. At the PCRA hearing, appellant's expert testified that the time of death was actually sometime between 9:00 p.m. on July 17 and 3:00 a.m. on July 18.[11] Trial counsel testified at the PCRA hearing that he was satisfied with the time of death estimation made by the

search warrant authorizing police to seize the computer was invalid. Although we deem these arguments previously litigated as discussed *infra,* we note that the authentication argument is also patently frivolous, since appellant does not dispute that the computer belonged to him. *See Commonwealth v. Zook*, 532 Pa. 79, 97, 615 A.2d 1, 10 (1992) (citations omitted)(documents may be authenticated by circumstantial evidence).

11. Appellant does not claim that trial counsel knew or should have known that an expert was available to provide testimony at trial similar to that offered at the PCRA hearing. This failure is sufficient reason in itself to deny this claim of ineffective assistance of counsel. *Commonwealth v. Morales, a.k.a. Pirela*, 549 Pa. 400, 417–19, 701 A.2d 516, 525 (1997).

Commonwealth's expert, no doubt because appellant's proffered alibi, if believed, would have rendered it impossible for him to have committed the murder between 5:00 p.m. and 8:00 p.m.[12] Trial counsel was not unreasonable in deciding to base the alibi argument on the time of death estimations adduced by the Commonwealth, since these estimations did not undermine the alibi argument. Therefore, appellant is not entitled to relief on this claim.

Next, appellant alleges that trial counsel was ineffective for failing to call a plethora of character witnesses to establish appellant's reputation for truthfulness, peaceableness, and being a law-abiding citizen. To establish that trial counsel's failure to call a witness amounted to ineffective assistance, petitioner must establish the existence and availability of the witness, counsel's duty to know of the witness, the witness' willingness to appear on petitioner's behalf, and the necessity for the proposed testimony to avoid prejudice. *Commonwealth v. Stanley*, 534 Pa. 297, 299, 632 A.2d 871, 872 (1993). Appellant does not, by affidavit or otherwise, set forth the name of a single person who was willing to testify on his behalf as a character witness, much less establish that he was prejudiced by the lack of character witnesses. Therefore, appellant is not entitled to relief on this claim.

Appellant next alleges that trial counsel was ineffective for failing to introduce reports of two witnesses who claimed to have seen the victim emerge from her house at about 2:06 p.m. (the Commonwealth having suggested that she had been kidnapped at about 1:00 p.m.). Appellant argues that these reports, if adduced at trial and believed by the jury, would have undermined the Commonwealth's entire theory of

12. Appellant urges that the Commonwealth also speculated that death could have been delayed by as much as three hours after the fatal shot was fired, making it necessary to call a rebuttal expert to restore the significance of appellant's alibi. However, trial counsel will not be deemed ineffective for failing to call a medical, forensic, or scientific expert merely to critically evaluate expert testimony which was presented by the prosecution. *Commonwealth v. Smith*, 544 Pa. 219, 238, 675 A.2d 1221, 1230 (1996) (citation omitted). Because appellant only claims that a rebuttal expert could have critically evaluated the testimony of the Commonwealth's expert, this claim necessarily fails.

the case, including the identity of the murderer. Appellant fails to bridge the mountain of alleged facts and the mountain of conclusions to be drawn therefrom with even the smallest pebble of reasoning. This failure is undoubtedly attributable to the fact that the Commonwealth's expert entomologist opined that the victim was not killed until sometime between 5:00 p.m. and 8:00 p.m.; therefore, the asserted inconsistency in the time the victim was supposedly kidnapped and when she was reportedly seen by the two witnesses, even if credited by the jury, would be inconsequential. Accordingly, appellant fails to demonstrate that counsel was unreasonable for declining to pursue this minor inconsistency or that he was prejudiced thereby.

█ Next, appellant brings a general ineffectiveness claim rooted in trial counsel's failure to file a motion *in limine* to exclude the seizure of "virtually all of the evidence from the Copenhefer home and store" on the grounds that such evidence "bore no reasonable relevance to the case at bar." This claim is patently frivolous, since most, if not all, of the evidence seized from appellant's home and store was highly probative, as explained in detail by this Court on direct appeal. *See Commonwealth v. Copenhefer, supra,* 526 Pa. at 558–61, 587 A.2d at 1355–56. Appellant does not explain which articles of evidence he believes are *not* relevant, much less explain *why* he believes these items to be irrelevant. Thus, this claim fails.

█ Next, appellant alleges that trial counsel did not adequately press the theory that a person named Eric Johnson could have committed the murder. Specifically, appellant urges that the prosecutor was able to undermine the theory that Johnson might have committed the murder through the admission of hearsay evidence which could have been excluded through timely objection. Appellant does not attempt to explain what evidence amounted to inadmissible hearsay nor explain why, much less attempt to explain why, the Eric Johnson theory was plausible in the first instance. Thus, appellant is not entitled to relief on this claim.

Appellant's next argument is that trial counsel was ineffective for failing to allege that the Commonwealth's expert witness on the subject of tire tread analysis was unqualified to render expert testimony and conducted tire tread testing in an unreliable and improper manner. The qualification of an expert witness is a matter within the sound discretion of the trial court and will be reversed only for an abuse of discretion. *Commonwealth v. Bennett,* 471 Pa. 419, 423, 370 A.2d 373, 375 (1977). It is well established in Pennsylvania that the standard for qualification of an expert is a liberal one and the test to be applied is whether the witness has a reasonable pretension to specialized knowledge on the subject under investigation. If he does, he may testify and the weight of that testimony is for the trier of fact to determine. *Commonwealth v. Gonzalez,* 519 Pa. 116, 128, 546 A.2d 26, 31 (1988). It is also well established that an expert may render an opinion based on training and experience; formal education on the subject matter is not necessarily required. *See Miller v. Brass Rail Tavern, Inc.,* 541 Pa. 474, 480–81, 664 A.2d 525, 528 (1995). Here, appellant points to nothing in the record to support his assertion that the Commonwealth's expert was not qualified to testify or that his tests were conducted in an unreliable manner. Our own review of the Record reveals that, prior to being admitted as an expert in tire tread analysis, FBI Special Agent James Gerhart testified as follows:

> As far as training in that area of tire tread examinations, ... about six and one-half years ago I pursued a specialized course of training concerning all of the different aspects of tire tread examinations. I worked with experienced examiners and I was given various types of practical problems. I've also taken tours of tire manufacturing companies and have participated in seminars involving tire tread examiners from throughout the United States.

We find that this excerpt demonstrates "a reasonable pretension to specialized knowledge on the subject under investiga-

tion," and conclude that the trial court did not abuse its discretion by admitting Agent Gerhart as an expert.[13]

With regard to appellant's allegation that Agent Gerhart conducted testing in an unreliable manner, appellant does not point to any part of Agent Gerhart's testimony or any other trial testimony to support his contention that the tire tread testing was unreliably conducted. Appellant points only to the supposedly conflicting expert testimony adduced on his behalf at the PCRA hearing, when appellant called his own expert to testify that the width of the tire on appellant's vehicle did not match the width of the tire imprint in question. Thus, the only argument which can possibly be gleaned from appellant's brief is that trial counsel was ineffective for failing to call the expert who testified at the PCRA hearing as a witness at trial to impeach the testimony of FBI Agent Gerhart.

Trial counsel will not be deemed ineffective for failing to call a medical, forensic, or scientific expert merely to critically evaluate expert testimony which was presented by the prosecution. *Commonwealth v. Smith*, 544 Pa. 219, 238, 675 A.2d 1221, 1230 (1996) (citation omitted). Here, appellant not only fails to establish Meinhart's availability and willingness to testify at trial, he also fails to establish that Meinhart did anything but critically evaluate the expert testimony presented by the prosecution. Moreover, appellant fails to demonstrate prejudice in light of the abundance of evidence against him apart from the expert testimony in question. Therefore, the claims of ineffectiveness relating to the trial testimony of Agent Gerhart and the PCRA hearing testimony of appellant's belated expert merit no relief.

**13.** Appellant also avers generally that trial counsel was ineffective for allowing a number of the Commonwealth's other expert witnesses to testify without any adequate foundation being laid. Appellant does not name the other experts who testified without a foundation, nor does appellant allude to any excerpts of testimony which were problematic, much less explain why such testimony was improper, or how it prejudiced appellant. Therefore, appellant is not entitled to relief on this claim.

 Next, appellant claims that trial counsel was ineffective for failing to object when the prosecutor elicited testimony from the victim's husband that they had a "happy marriage" and were "typical Americans," alleging that this testimony created undue sympathy for the deceased and aroused the passions and prejudices of the jury. Testimony relating to characteristics of the victim is admissible when it is not elicited in a manner which would inflame the jury. *Commonwealth v. Blystone*, 519 Pa. 450, 469, 549 A.2d 81, 90 (1988). We fail to see how this testimony could have "inflamed" the jury as to deprive him of a fair trial given the evidence in this matter, and therefore deny appellant relief on this claim.

 Next, appellant asserts that trial counsel was ineffective for stipulating to the chain of· custody of certain physical evidence when substantial gaps and defects existed in the chain that could have resulted in suppression of that evidence.[14] However, gaps in the chain of custody go to the weight that is to be afforded evidence, not to its admissibility. *See Commonwealth v. Dunston*, 496 Pa. 552, 554, 437 A.2d 1178, 1179 (1981) (citing *Commonwealth v. Bolden*, 486 Pa. 383, 388, 406 A.2d 333, 335 (1979)). Appellant does not explain how the alleged defects in the chain of custody would have caused the jury to weigh any evidence that was presented to them by the Commonwealth in a different manner. Therefore, appellant fails to establish prejudice and is not entitled to relief on this claim.

Next, appellant posits trial counsel's ineffectiveness for failure to call a number of unnamed witnesses who allegedly would have been able to impeach testimony elicited from also unnamed Commonwealth witnesses, as well as corroborate testimony offered by unnamed defense witnesses. Appellant has failed to comply with any of the five requirements of

14. It is somewhat unclear from this poorly documented claim exactly what evidence is at issue and exactly what gaps allegedly existed in the chain of custody, but we will assume for purposes of this discussion that gaps existed in the chain of custody with regard to at least some physical evidence.

*Commonwealth v. Stanley, supra,* for establishing ineffectiveness of trial counsel for failure to call witnesses. Therefore, appellant is not entitled to any relief on this claim.

█ Next, appellant makes the general claim that trial counsel was ineffective for challenging the weight, rather than the admissibility, of "voluminous amounts of circumstantial evidence which may have been otherwise barred by judicial ruling." Although appellant is correct that a "voluminous" amount of circumstantial evidence was amassed pointing inexorably to his guilt, he does not even attempt to offer any legal theories under which any of this evidence could have been excluded. Therefore, this claim merits no relief.

█ Next, appellant urges that trial counsel was ineffective for failing to request a jury instruction on the issue of the voluntariness of his waiver of Fifth Amendment rights, based on his belief that he was bamboozled by the district attorney into making statements about the charges pending against him. This is yet another attempt by appellant to recast the claim that was previously litigated on direct appeal to this Court, discussed at p. 251, *supra.* This Court will not entertain claims or variations on claims which were previously litigated. *See Commonwealth v. Whitney, supra,* 550 Pa. at 629, 708 A.2d at 476. Therefore, appellant is not entitled to relief.

█ Appellant next alleges that trial counsel was ineffective for failing to request a cautionary instruction with respect to certain identification testimony since the witness had allegedly seen media photographs which supposedly tainted the identification procedures. Appellant fails to cite either the name of the witness who allegedly provided the identification testimony, a citation to the Record to support the assertion that the witness had viewed media photographs, or caselaw which would support issuance of a cautionary instruction in these circumstances. Appellant also fails to explain how prejudice resulted to him from failure to issue such an instruction. This claim merits no relief.

██ Next, appellant urges us to find trial counsel ineffective for a variety of reasons relating to the trial court's declining to instruct the jury as a matter of law to find the mitigating circumstance that appellant had no prior criminal record. The issue of the propriety of the trial court's instruction on this very point was litigated in this Court on direct appeal. *Commonwealth v. Copenhefer, supra,* 526 Pa. at 565, 587 A.2d at 1358. Appellant may not relitigate the issue now in the guise of an ineffective assistance claim. *See Commonwealth v. Whitney, supra,* 550 Pa. at 629, 708 A.2d at 476. Therefore, appellant is not entitled to relief.

Next, appellant alleges that trial counsel was ineffective for failing to call witnesses at the penalty phase to testify to his good character. Again, this claim fails because appellant has failed to fulfill any of the requirements necessary in order to establish trial counsel's ineffectiveness for failing to call a witness. *See Commonwealth v. Stanley, supra* at 15.

 Next, appellant urges that we find trial counsel ineffective for failing to argue that the prosecutor engaged in misconduct in several instances during his penalty phase closing argument. Comments by a prosecutor do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a true verdict. *Commonwealth v. Sam,* 535 Pa. 350, 362, 635 A.2d 603, 608 (1993), *cert. denied,* 511 U.S. 1115, 114 S.Ct. 2123, 128 L.Ed.2d 678 (1994); *Commonwealth v. Jones,* 530 Pa. 591, 607, 610 A.2d 931, 938–39 (1992). It is within the discretion of the trial court to determine whether a defendant has been prejudiced by misconduct or impropriety to the extent that a mistrial is warranted. *Commonwealth v. Simmons,* 541 Pa. 211, 246–47, 662 A.2d 621, 638 (1995). In considering appellant's claims of prosecutorial misconduct, we note that a prosecutor's comments do not constitute evidence. *Commonwealth v. LaCava,* 542 Pa. 160, 181, 666 A.2d 221, 231 (1995)(citing *Commonwealth v. Green,* 525 Pa. 424, 461, 581 A.2d 544, 562 (1990)). The trial court clearly instructed the

jury, which is presumed to follow the court's instructions, on this rule of law. *See* T.T. Day # 15 at 54–56.

■ First, appellant argues that trial counsel was ineffective for failing to argue that the prosecutor committed misconduct when he completed his closing argument by referring to the Bible in the following manner:

And its a penalty, ladies and gentlemen, its even mentioned in the Bible, the book of Exodus, where it talks about, "and the murderer shall be put to death," because this is the only just penalty based on the evidence in this case. Its the only penalty that I submit is appropriate if our laws have to have any meaning. Thank you.

T.T. Day # 17 at 49. Prior to this Court's decision in *Commonwealth v. Chambers*, 528 Pa. 558, 599 A.2d 630 (1991), *cert. denied*, 504 U.S. 946, 112 S.Ct. 2290, 119 L.Ed.2d 214 (1992), biblical references were considered to be "on the limits of oratorical flair," but were not categorically forbidden. *Id.* at 568, 599 A.2d at 644. In *Chambers*, the Court adopted a *per se* rule that prosecutors automatically engaged in reversible prosecutorial misconduct by referring to the Bible. *Id.* However, the Court has subsequently decided that in cases tried before the decision in *Chambers* was published, trial counsel may not be deemed ineffective for failing to object to a prosecutor's biblical references, since that would require trial counsel to have foreseen the prophylactic rule embodied in *Chambers*. *See Commonwealth v. Cook*, 544 Pa. 361, 384, 676 A.2d 639, 650 (1996). Because appellant was tried in 1989, well before the decision in *Chambers* was published, trial counsel was not ineffective for failing to object to the prosecutor's biblical reference. Thus, this claim merits no relief.

■ Next, appellant argues that trial counsel was ineffective for failing to object when the prosecutor averred in his closing argument that "no true mitigating circumstances existed," when in fact the parties had stipulated to the existence of the mitigating circumstance that appellant had no prior criminal record. However, appellant misquotes the prosecutor,

who actually made the following statement in the portion of his summation to which appellant is referring:

> ... I can't see any evidence of any circumstances that forced him to do it. He chose to do it on his own, in a conscious and deliberate and calculated fashion, and that's why I submit there are **no true mitigating circumstances of merit** in this particular case.

T.T. Day # 17 at 38 (emphasis added). A prosecutor may argue to the jury that it should not attach any substantial weight to mitigating circumstances presented by the defense. *See Commonwealth v. Basemore,* 525 Pa. 512, 529, 582 A.2d 861, 869 (1990). Here, by urging the jury that the mitigating circumstances were not "of merit," the prosecutor was merely suggesting to the jury that little, if any, weight should be attached to the mitigating factors in light of the planned nature of the murder. Such comments are permissible under *Basemore,* and, in any event, did not have "the unavoidable effect of ... forming in [the jurors'] minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a true verdict." *Commonwealth v. Sam, supra,* 535 Pa. at 362, 635 A.2d at 608.

Appellant next urges that trial counsel was ineffective for failing to object to the prosecutor's suggestion that the victim may have begged for her life in the moments before she was murdered. However, this Court recently rejected an ineffectiveness claim based on an identical allegation of prosecutorial misconduct. *See Commonwealth v. Henry,* 550 Pa. 346, 380–81, 706 A.2d 313, 330 (1997) (suggestion that victim looked into defendant's eyes and begged for her life was a legitimate inference to be drawn from evidence at trial and did not constitute prosecutorial misconduct). Therefore, appellant is not entitled to relief on this or any of his ineffectiveness claims predicated on alleged prosecutorial misconduct.

Next, appellant argues that the trial court erred by failing to include in its charge to the jury a prophylactic instruction that if the jury reached a deadlock or impasse during deliberations, they would be excused and a sentence of

life imprisonment would be imposed regardless of whether they were unanimous in their belief that further deliberations would not result in a verdict. The relevant statutory section is 42 Pa.C.S. § 9711(c)(1)(v), which provides as follows:

> The court may, in its discretion, discharge the jury if it is of the opinion that further deliberation will not result in a unanimous agreement as to the sentence, in which case the court shall sentence the defendant to life imprisonment.

The statute clearly gives the trial court the discretion to determine when the jury has reached a deadlock. Appellant asks us to strip the trial court of its statutorily vested discretion and order it to issue a prophylactic instruction declaring deliberations at an end at the first hint of a deadlock, even if some jurors do not agree that further deliberations will prove futile. This we will not do, as the meaning of the statute itself is plain. Therefore, appellant is entitled to no relief on this convoluted claim.

Next, appellant argues that trial counsel was ineffective for failing to request the trial court to charge the jury that the heinous nature of the crime should not be considered as an aggravating circumstance. Appellant offers no caselaw to establish that such a charge is appropriate, and fails to argue that he was prejudiced by the absence of such a charge. Therefore, this claim of ineffectiveness fails.

Next, appellant argues that trial counsel was ineffective for arguing that appellant could never be granted parole if sentenced to life imprisonment when such a fact was not in evidence. We will not deem trial counsel ineffective for making the beneficial argument that the jury could sentence appellant to life in prison without worrying that he might someday be released. Therefore, no relief is due.

Next, appellant argues that trial counsel was ineffective for failing to object that the jury was qualified as "death prone." Besides citing nothing in the record nor any caselaw to support this claim, appellant does not even explain what he means by "death prone," and therefore does not furnish this

Court with any basis by which we can evaluate this claim further.

Next, appellant avers generally that trial counsel was ineffective for failing to present certain mitigating factors which were warranted by the facts and circumstances of this case. Since appellant explains neither what these mitigating factors were nor how they were warranted in this case, he is not entitled to any relief on this claim.

Finally, appellant asserts that trial counsel was ineffective for failing to argue that two aggravating factors were found when only one existed. The jury found the following two statutory aggravating circumstances: (1) "The victim was being held by the defendant for ransom or reward...." 42 Pa.C.S. § 9711(d)(3); (2) The defendant committed the killing while in the perpetration of a felony. § 9711(d)(6). The record amply supports the jury findings with regard to both of these aggravating circumstances; appellant does not explain why he believes otherwise.

In sum, none of appellant's ineffectiveness of counsel claims merit relief. Similarly, his claim that the aggregate effect of the alleged ineffectiveness was to deprive him of a fair trial merits no relief. *See Commonwealth v. Murphy*, 540 Pa. 318, 657 A.2d 927 (1995)(no number of failed claims may collectively attain merit if they could not do so individually).

## II. *ALLEGED BRADY ERRORS*

Appellant alleges that the Commonwealth withheld and/or failed to provide exculpatory evidence. In *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court held that a prosecutor's suppression of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, regardless of the good or bad faith of the prosecution. *See also* Pa.R.Crim.P. 305 (providing for mandatory discovery of evidence favorable to accused upon request). The omission, once established, must be evaluated in the context of the entire record. *Commonwealth v. Green,*

536 Pa. 599, 604, 640 A.2d 1242, 1245 (1994). If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. *Id.* On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt. *Id.*

▮▮▮ In order to establish a *Brady* violation, appellant must prove, by reference to the record, that evidence was withheld or suppressed by the prosecution. *See Commonwealth v. Rucci,* 543 Pa. 261, 282, 670 A.2d 1129, 1140 (1996)(no *Brady* violation where record did not reveal evidence of prosecutor engaging in misconduct to conceal and/or suppress exculpatory evidence). Furthermore, when a *Brady* claim is advanced under the PCRA, an appellant can only obtain relief by establishing that the violation of his Constitutional right to due process "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. 9543(a)(2)(i); *Commonwealth v. Buehl,* 540 Pa. 493, 502, 658 A.2d 771, 775 (1995).

Appellant refers us to pages 165–168 of the PCRA hearing transcript in order to support his contention that the Commonwealth withheld or failed to provide exculpatory evidence. The following excerpts from those pages, involving testimony elicited from the prosecutor by appellant's PCRA counsel, are most pertinent to our inquiry:

Q: Mr. Vogel, the—you can't say for sure at this point what preliminary reports were given to the defense and not given to the defense, is that fair to say?

A: That's fair to say in their entirety. I mean there are certain reports that I can look at and say with absolute certainty these were given over ... As far as every single report, I can't say with certainty which ones were given over and which ones were not.

. . . .

Q: Of the pages of the missing reports that we put in the petition, paragraphs contained on the pages 34 through 42,

those are the ones at least that you provided to our investigator after the trial?

A: Yes.

Q: Right, And you do not know whether—you can't say for sure whether some of those may have been given during the trial?

A: Some of those I'm pretty sure were . . . in all honesty.

Q: All right.

A: Some other ones that deal with the people that allegedly saw Sally Weiner at 2 o'clock, I have no specific recollection of that one. I don't know if that was turned over or not.

. . . .

Q: Right. And for instance, the people who had been to the scene, Mr. Stutman, Mr. Peterson, there were subsequent police reports that showed that this van had, in fact, entered in proximity to the photographic imprints of the tire imprint, correct?

A: Yes.

Q: And you don't know whether this was previously given?

A: I believe that it was, but I can't say for certain.

Q: All right. And as to the other police reports that I referred to in my petition, that for instance would contradict or impeach Mr. Weiner of where he was at certain particular times, again, you don't know whether these were disclosed?

A: That's correct. Some of them may not have been. I don't have specific recollections about them.

Q: That's all I have, your honor.

. . . .

THE COURT: And lets be specific about the witnesses that asserted that they saw the victim at a time later than believed that she was kidnapped. If you received police reports that contained statements of victims or of those witnesses to that effect, and if your investigation had led you to conclude that the witnesses were mistaken either as

to the hour or the date, ... you would have made that information available to the defense even if you believed the witnesses were in error?

A: Yes.

THE COURT: All right. That's all I wanted to know.

 Based on these excerpts, we note first that appellant has failed to meet his threshold PCRA burden of establishing by a preponderance of the evidence that any constitutional violation occurred. *See* 42 Pa.C.S. § 9543(a). Appellant lists a multitude of reports, statements, and witnesses that the prosecution allegedly withheld,[15] but refers only to the above excerpts in order to support his conclusion that the prosecutor actually withheld this material. However, not only does the prosecutor not acknowledge his failure to turn over any exculpatory or material evidence in the aforementioned excerpts, he testifies that he would have made any such evidence at issue available to the defense if it had come to his attention. Thus, we find that appellant has failed to sustain his PCRA burden of establishing a *Brady* violation by a preponderance of the evidence. *See also Commonwealth v. Rucci, supra* (no *Brady* violation where record did not reveal evidence of prosecutor engaging in misconduct to conceal and/or suppress exculpatory evidence); *Commonwealth v. Hawkins*, 549 Pa. 352, 372, 701 A.2d 492, 502 (1997) (no *Brady* violation where appellant offered nothing more than his conjecture that prosecutor withheld the evidence at issue).

 Moreover, even if appellant could establish that *Brady* was violated in this case, such error would be harmless

---

**15.** All of this allegedly exculpatory evidence was impeachment evidence, as appellant cites a laundry list of witnesses and reports which he believes would have undermined the testimony of various Commonwealth witnesses. In order to be entitled to a new trial owing to the prosecution's failure to disclose evidence bearing on the credibility of its witnesses, appellant must demonstrate that the reliability of the witness may well be determinative of his guilt or innocence. *Commonwealth v. Morales*, 549 Pa. 400, 413–15, 701 A.2d 516, 523 (1997) (citing *Commonwealth v. Moose*, 529 Pa. 218, 232, 602 A.2d 1265, 1272 (1992)). As discussed *infra*, appellant's *Brady* claims cannot even survive traditional "harmless error" scrutiny, much less this heightened standard.

beyond a reasonable doubt in light of the multitude of incriminating evidence adduced at trial. Appellant attempts to counter the obvious conclusion regarding harmless error by asserting in conclusory fashion that "other items such as guns, ammunition, human tissue, the metal rod, the crepe paper, the tire marks, oil droppings and other items cannot be used to infer appellant's involvement in the crime." Appellant fails to provide any legal argument to support his untenable position that none of these items may be considered in the course of our harmless error analysis. Appellant also recasts a number of his ineffectiveness of counsel claims, arguing, for example, that information seized from his computer may not now be considered in the harmless error inquiry. Since we have rejected appellant's position with regard to the information seized from his computer in part I of this opinion, and since now-Chief Justice Flaherty carefully determined in *Copenhefer I* that this and the other evidence to which appellant alludes overwhelmingly established his guilt, we now determine that any putative *Brady* errors were indeed harmless beyond a reasonable doubt.

### III. *ALLEGED INTERCEPTION OF MAIL*

■ Appellant asserts that his Sixth Amendment right to counsel was violated when prison officials intercepted and opened his ingoing and outgoing mail prior to his trial, including privileged attorney-client correspondences. The United States Supreme Court has ordered a new trial due to a Sixth Amendment violation in cases where an individual's correspondences were monitored by law enforcement officers and where attorney-client correspondences were subsequently turned over to the prosecuting authorities in advance of trial. *See Black v. United States*, 385 U.S. 26, 28, 87 S.Ct. 190, 17 L.Ed.2d 26 (1966). Here, appellant's assertion that privileged correspondences were turned over to the prosecutor is belied by the uncontroverted testimony elicited from the prosecutor at the PCRA hearing:

Now, I did not receive information from [prison authorities] about substantive contents of anything that I can recall

being of any consequence whatsoever. There is certainly nothing that was used at time of trial against him in any fashion. As I say, I don't even recall ever being advised of the contents of any [mail]. As far as I know, they were not always monitoring or impeding his legal mail. Certainly nothing that came to my attention ... But I do recall, or believe I recall, that they were monitoring his personal mail ... because of the additional allegations regarding criminal offenses occurring while he was in prison [relating to appellant's alleged involvement in a conspiracy to kill witnesses and judges] and the concern of ... escape ... but to the best of my recollection, I don't recall any specific information ever being shared with me.

P.C.R.A. Hearing Transcript at 170–71.

Thus, since appellant fails to establish that the prosecutor ever intercepted or had access to his prison mail, he also fails to establish a Sixth Amendment violation. Moreover, under the PCRA, appellant would be required to establish that the putative Constitutional violation "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *See* 42 Pa.C.S. § 9543(a)(2)(i). This, appellant does not even attempt to do, undoubtedly because the truth-determining process in this matter is unassailable in light of the body of evidence which warranted the jury's verdict of guilt.

In sum, we have thoroughly reviewed each of the claims presented by appellant, and determined that he is entitled to no relief. Accordingly, we affirm the Order of the PCRA court.[16]

ZAPPALA, J., concurs in the result.

FLAHERTY, C.J., files a concurring and dissenting opinion in which NEWMAN, J., joins.

16. The Prothonotary of the Supreme Court is directed to transmit, as soon as possible, the complete record in this case to the Governor of Pennsylvania.

FLAHERTY, Chief Justice, concurring and dissenting.

Although, as the majority points out, prior to the *Chambers* case, references to the Bible were generally treated as oratorical flair which was cautioned against but not forbidden, each case must be considered on its facts. Here, the statement was:

> And it's a penalty, ladies and gentlemen, it's even mentioned in the Bible, the book of Exodus, where it talks about, "and the murderer shall be put to death," because this is the only just penalty based on the evidence in this case. It's the only penalty that I submit is appropriate if our laws are to have any meaning.

This comment does not merely refer to the Bible; rather, it quotes the Bible as requiring the death penalty and it argues that if our law is to have any meaning, the penalty required by the Bible—death—must be imposed. Thus, in effect, the prosecutor substitutes biblical law for the law of Pennsylvania, arguing that the law of Pennsylvania has meaning only if what is viewed by many to be religious law—the book of Exodus—is applied. This, in my view, goes too far and requires a reversal of the sentencing phase of the case.

Thus, I dissent, as to the majority's affirmance of the judgment of sentence, but I agree as to the majority's affirmance of the conviction.

NEWMAN, J., joins in this concurring and dissenting opinion.