J-S09001-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LAMAR ALSTON | : | |
| | : | |
| Appellant | : | No. 1368 WDA 2017 |

Appeal from the PCRA Order August 24, 2017
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0010059-2012

BEFORE:   PANELLA, P.J., LAZARUS, J., and STRASSBURGER[*], J.

MEMORANDUM BY PANELLA, P.J.:                 **FILED JULY 31, 2019**

Lamar Alston ("Appellant") appeals from the order dismissing his counseled first petition for relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46. After a bench trial, the court convicted Appellant of murder of the first degree and numerous related crimes.  In this appeal, he challenges the denial of his request for a new trial based on his claim of after discovered evidence, and a purported **Brady** violation.[1] We affirm.

We derive the facts of the original case from the PCRA court's opinion, and our independent review of the record.  **See** PCRA Court Opinion, 8/3/18,

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] **Brady v. Maryland**, 373 U.S. 83 (1963).

at 4-13. While there are disagreements about certain specifics, the basic underlying facts of the case are not in dispute. For purposes of this appeal, there is no dispute that Appellant shot and killed Mileek Grissom during a melee between Appellant's *posse* and Jonathan Tillar's *posse*. The only factual disputes relevant to this appeal center on whether Grissom was armed and fired first.

At trial, the Commonwealth presented evidence that Appellant was involved in an ongoing dispute with Jonathan Tillar.[2] Appellant and his associates suspected Tillar of informing against them to the police. In particular, Appellant blamed Tillar for a police raid on the home of his younger half-brother, Darrell Mar, nicknamed "Rico."

On June 24, 2012, in two separate encounters, Tillar confronted Rico over the claim that Tillar was a police informant. The dispute escalated into a fistfight. Tillar struck Rico on his face with his handgun, causing a deep gash. Rico called Hope Barfield (who referred to Rico as her cousin) to tell her that he had been hurt. Barfield and Appellant went to the scene of the second fight.

By the time they got there, the fistfight had ended. There was testimony that Barfield encouraged Appellant to shoot at Tillar, and Tillar's friend,

---

[2] Tillar died in December, 2016, of a drug overdose. **See** N.T. Hearing, 8/21/17, at 28.

Grissom.  Appellant shot at Tillar and Grissom. Tillar managed to duck and avoid being shot, but Grissom was fatally wounded.  He was pronounced dead at the hospital.

Alerted by witnesses, police converged at the crime scene within minutes after the shooting began.  They apprehended Appellant as he was trying to leave on foot.  Appellant aimed his handgun at the oncoming police, but the gun jammed and did not fire.

Appellant was tried jointly in a bench trial with his friend,[3] Barfield. Testimony of the number of shots fired ranged from five to nine.  Ballistic evidence established that the shell casings recovered at the crime scene all related to Appellant's handgun.  According to Pittsburgh homicide Detective Robert Provident, the three casings found by the police, including the one which struck Grissom, all matched the firearm used by Appellant, a Kel-Tec 9mm. The police found no evidence of any other firearm.

The trial court convicted Appellant of first-degree murder, one count of criminal attempt (on Tillar), one count of aggravated assault, one count of flight to avoid apprehension, one count of person not to possess a firearm, three counts of recklessly endangering another person and one count of

_____

[3] The PCRA court found that Barfield "was, and may still be, [Appellant's] girlfriend." PCRA Court Opinion, 8/3/18, at 16.

tampering with or fabricating evidence.[4] His co-defendant, Hope Barfield, was acquitted of all charges.

On January 16, 2014, the court sentenced Appellant to life imprisonment without parole for first-degree murder, and a concurrent sentence of not less than ten nor more than twenty years of incarceration for attempted first-degree murder, with no further penalty on the remaining convictions. *See* N.T. Sentencing, 1/16/14, at 75. On direct appeal, this Court affirmed the judgment of sentence. *See Commonwealth v. Alston*, No. 266 WDA 2014, 2014 WL 10558589, at *4 (Pa. Super., filed November 25, 2014) (unpublished memorandum). Our Supreme Court denied allowance of appeal. *See Commonwealth v. Alston*, 114 A.3d 1038 (Pa. 2015).

On August 2, 2016, Appellant filed a timely *pro se* petition for PCRA relief. The court appointed counsel, who, after extensions, filed an amended petition on March 6, 2017. In the amended petition, Appellant alleged that he is entitled to a new trial based on the newly discovered testimony of Barfield, Appellant's friend, Nate Watts, and Franchesca (nicknamed "Frankie") Reyes,

---

[4] The court found Appellant not guilty of the attempted homicide of Collier Township police officer Franz Zygmuntowiz and Pittsburgh police officer David Sisak, not guilty of aggravated assault against the two police officers, not guilty of robbery, and not guilty of criminal conspiracy. *See* N.T. Trial, 10/21/13, at 569-70.

then the girlfriend of Watts.[5]  Appellant also included a claim based on an alleged ***Brady*** violation.

Appellant argues that the proposed newly discovered testimony would establish that Grissom was also carrying a firearm, and Grissom shot first at Appellant.  Therefore, he maintains, based on this after discovered evidence, the jury would have concluded that Appellant's shooting of Grissom was in self-defense, or at least "imperfect self-defense," constituting third-degree murder instead of murder of the first-degree.

The PCRA court held a hearing on August 21, 2017.  After the hearing, the PCRA court denied the petition by order of court dated August 24, 2017. This timely appeal followed.  Both Appellant and the PCRA Court complied with Rule 1925.  ***See*** Pa.R.A.P. 1925.

Appellant raises four questions on appeal.

> I. Did the trial court err when it denied the request for a new trial in Appellant's [a]mended PCRA petition based on after– discovered evidence by Hope Barfield?
>
> II. Did the trial court err when it denied the request for a new trial in Appellant's [a]mended PCRA petition based on after-discovered evidence by Franchesca Reyes?
>
> III. Did the trial court err when it denied the request for a new trial in Appellant's [a]mended PCRA petition based on after-discovered evidence by Darrell Mar?

---

[5] It turned out that Watts was unwilling to cooperate and Appellant essentially abandoned the argument based on his alleged evidence.  Notably, none of the proposed certifications is signed by the respective proponents.

IV. Did the trial court err when it denied the request for a new trial in Appellant's [a]mended PCRA petition based on **Brady** violations?

Appellant's Brief, at 5.

Our standard and scope of review for the denial of PCRA relief are well-settled.

> To the extent review of the PCRA court's determinations is implicated, an appellate court reviews the PCRA court's findings of fact to determine whether they are supported by the record, and reviews its conclusions of law to determine whether they are free from legal error. The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level.

**Commonwealth v. Spotz**, 84 A.3d 294, 311 (Pa. 2014) (citations omitted).

"The PCRA court's factual determinations are entitled to deference, but its legal determinations are subject to our plenary review." **Commonwealth v. Johnson**, 966 A.2d 523, 532 (Pa. 2009) (citations omitted). "A PCRA court passes on witness credibility at PCRA hearings, and its credibility determinations should be provided great deference by reviewing courts." **Id.** at 539 (citations omitted).

To be eligible for PCRA relief, the petitioner must plead and prove by a preponderance of the evidence all of the following:

> (2) That the conviction or sentence resulted from one or more of the following:
>
>         *   *   *
>
>    **(vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become**

> **available and would have changed the outcome of the trial if it had been introduced.**

42 Pa.C.S.A. § 9543(a)(2)(vi) (emphasis added).

> In order to succeed on such a claim, the petitioner must establish that: (1) the evidence has been discovered after the trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) such evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) such evidence would likely compel a different verdict.

***Commonwealth v. Abu-Jamal***, 720 A.2d 79, 94 (Pa. 1998) (citations omitted).

In this appeal, Appellant first argues that Barfield's PCRA hearing testimony established that Grissom had a firearm, and he shot first at Appellant. ***See*** Appellant's brief, at 19-25. Appellant maintains that the Commonwealth withheld Barfield's statements to police during discovery. Appellant notes, and the PCRA court found, that Barfield was unavailable during his trial because she exercised her constitutional right not to testify. However, Appellant fails to explain why, after Barfield was acquitted, it took him almost four more years to discover her potential testimony and present it in a PCRA petition.

Further, the PCRA court concluded that Barfield's testimony was not credible. ***See*** PCRA Court Opinion, 8/3/18, at 16. We give great deference to the credibility findings of the PCRA court which are supported by the record. ***See Johnson***, 966 A.2d at 532. Here, the record confirms that Barfield lied about having car trouble in an effort to avoid speaking to the police. ***See*** N.T.

Trial, 10/18/13, at 446-47. She testified inconsistently about not seeing anything. *See id.* at 451. She claimed police corruption in withholding the statement she gave to them, but Appellant has failed to present any independent evidence of police corruption or prosecutorial misconduct.

Moreover, the PCRA court determined that the evidence at trial "overwhelmingly supports" Barfield's original statement to the police that Appellant was "the one firing the gun," and that she did not see what was in Grissom's hand. PCRA Court Opinion 8/3/18, at 17. The record supports these findings. *See* N.T. Trial, 10/18/13, at 451. Appellant's first claim fails to merit relief.

In his second claim, Appellant posits that the PCRA hearing testimony of Reyes, much like that of Barfield, establishes that Grissom had a gun and shot first. *See* Appellant's Brief, at 26-29. However, Appellant's argument again fails to establish that the PCRA court erred in finding that he did not act with reasonable diligence in discovering Reyes's testimony.

The PCRA court found that Appellant was aware of Watts and that Reyes was Watt's girlfriend. The court also found that Appellant was aware that Watts was present when Grissom was shot. "At minimum, [Appellant] knew or should have known of Ms. Reyes['s] existence as a potential witness at the time of trial." PCRA Court Opinion, 8/3/18, at 18. These findings are supported by Reyes's testimony that she drove Appellant's half-brother, Darrell Mar, to and from the scene of the shooting. *See* N.T., PCRA Hearing,

8/21/17, at 42. Appellant provides no explanation why he did not follow up earlier with Reyes, who testified that she was present at the shooting, and who was the girlfriend of his friend, Watts.

> [A] defendant who fails to question or investigate an obvious, available source of information, cannot later claim evidence from that source constitutes newly discovered evidence. The concept of reasonable diligence is particularly relevant where the defendant fails to investigate or question a potential witness with whom he has a close, amicable relationship.

***Commonwealth v. Padillas***, 997 A.2d 356, 363-64 (Pa. Super. 2010). (citations omitted).

Appellant also fails to establish how Reyes's testimony would compel a different outcome, where the ballistics evidence at trial established that there was only one firearm at the crime scene. ***See*** N.T., Bench Trial, 10/16-21, 2013, at 377. Appellant's second issue does not merit relief.

In his third issue, Appellant challenges the rejection of testimony by Darrell Mar that also supported the "Grissom-shot–first" scenario. ***See*** Appellant's Brief, at 29-32. However, the PCRA court concluded that Mar's testimony failed to meet the due diligence test and was not believable. ***See*** PCRA Court Opinion, 8/3/18, at 20.

At the PCRA hearing, Mar testified that, immediately before the shooting, Appellant and Barfield walked up to him and asked him if he was okay. N.T., PCRA Hearing, 8/21/17, at 53. Appellant was clearly aware that his half-brother was a witness to the shooting, and he fails to explain why he could not have presented Mar's testimony earlier. We defer to the PCRA court

on determinations of credibility. Furthermore, Appellant fails to establish how Mar's testimony would have compelled a different outcome, particularly in view of the ballistics evidence that there was only one firearm on the scene. Appellant's third issue does not merit relief.

Finally, in his fourth issue, Appellant claims a ***Brady*** violation. He asserts that the police withheld the statements of Barfield and Reyes to detectives that Grissom pulled out a firearm and shot first. ***See*** Appellant's Brief, at 34. Appellant asserts he was prejudiced.

With respect to whether ***Brady*** applies to a particular factual scenario, the standard of review is *de novo,* because it is a question of law.

> Under ***Brady***, the prosecution's failure to divulge exculpatory evidence is a violation of a defendant's Fourteenth Amendment due process rights. To establish a ***Brady*** violation, a defendant is required to demonstrate that exculpatory or impeaching evidence, favorable to the defense, was suppressed by the prosecution, to the prejudice of the defendant.
>
> The burden of proof is on the defendant to demonstrate that the Commonwealth withheld or suppressed evidence. The United States Supreme Court has held, [T]he prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial. Similarly, [our Supreme] Court has limited the prosecution's disclosure duty such that it does not provide a general right of discovery to defendants. Moreover, [our Supreme Court has] held that the prosecution is not obligated to reveal evidence relating to fruitless leads followed by investigators.
>
> To satisfy the prejudice inquiry, the evidence suppressed must have been material to guilt or punishment. . . . Moreover, [our Supreme Court has] held that the protection of ***Brady*** extends to the defendant's ability to investigate alternate defense theories and to formulate trial strategy.

As to ***Brady*** claims advanced under the PCRA, a defendant must demonstrate that the alleged ***Brady*** violation "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." ***See Commonwealth v. Copenhefer***, 553 Pa. 285, 719 A.2d 242, 259 (1998). The . . . United States Supreme Court has held that the mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense.

***Com. v. Cam Ly***, 980 A.2d 61, 75–76 (Pa. 2009) (most citations, brackets, footnote and internal quotation marks omitted).

Here, Barfield stated she told detectives at her initial interview that Grissom pulled a firearm and shot first. ***See*** N.T., PCRA Hearing, 8/21/17, at 13. Reyes stated she approached detectives at the preliminary hearing and told them that she had information regarding the shooting. ***See id***., at 38. She testified the police never followed up with her. ***See id***.

The PCRA court found that the Commonwealth provided the defense with the supplemental report generated as a result of Barfield's interview with the police through the pre-trial discovery process. Further, the PCRA court found that Appellant had not established the existence of any report regarding an interview with Reyes. Finally, the PCRA court found that Appellant failed to meet his burden to prove that any additional reports exist. The court's findings are supported by the record. As a result, the PCRA court's conclusion that Appellant failed to establish a ***Brady*** violation is not in error. Appellant's final issue on appeal merits no relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/31/2019