J-S04018-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JEFFREY PAUL SMITH, JR. | |
| Appellant | No. 593 EDA 2016 |

Appeal from the Judgment of Sentence December 14, 2015
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0000637-2015

BEFORE:  SHOGAN, J., OTT, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OTT, J.:                    **FILED APRIL 06, 2017**

Jeffrey Paul Smith, Jr., appeals from the judgment of sentence imposed December 14, 2015, in the Bucks County Court of Common Pleas. The trial court sentenced Smith to a term of five to 10 years' incarceration following his jury conviction of aggravated assault[1] for a December 2014 attack on his father.  On appeal, Smith argues the trial court erred in failing to grant a mistrial when the Commonwealth elicited testimony regarding his post-arrest silence, and challenges the discretionary aspects of his sentence. For the reasons below, we affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 2702(a)(1).

The facts underlying Smith's conviction are aptly summarized by the trial court as follows:

> The victim in this matter is Jeffrey Paul Smith, Sr. [(hereinafter "the victim")] age 53. On the afternoon of December 15, 2014, [the victim] was assaulted in his home by [Smith], his 28-year-old son. The evidence, viewed in the light most favorable to the Commonwealth as verdict winner, established that on the date of the assault, the victim and his wife had a verbal argument. After the argument, the victim retreated to the den of his home. Shortly thereafter, [Smith] entered the den and began to beat the victim with a long, cylindrical object. When the victim raised him arm to block a blow to his head, he was struck twice on his left forearm. [Smith] then struck the victim multiple times on his head, neck, collarbone, shoulder blade and left leg. The attack ended when the victim was able to get to his feet and run from the room. Pursued by [Smith], the victim ran to the garage, got into his truck and fled his residence. When [Smith] was questioned by police, he admitted he assaulted the victim, but claimed that he only hit the victim twice and that he struck the victim with a frying pan rather than the object the victim described. [Smith] did not report that he had acted in defense of his mother.
>
> Immediately after the assault, the victim was treated at Grand View Hospital where it was determined that his left forearm was broken into more than three fragments. His shoulder blade was also fractured. Dr. John Minnich, an orthopedic surgeon with Upper Bucks Orthopedics, testified that he performed surgery on the victim's arm, inserting rods and pins down the length of his forearm to stabilize the fractures and to allow the bone to heal. The external apparatus that held the victim's arm in place was later removed. The victim continued to see multiple medical professionals following his surgeries for purposes of physical therapy and long-term pain management. At the time of trial, the victim had limited use of his left arm, was unable to life heavy objects and was still undergoing physical therapy. Dr. Minnich testified that he could not predict how much functionality the victim would regain in his left arm.

Trial Court Opinion, 6/15/2016, at 1-2.

Smith was arrested and charged with aggravated assault, simple assault and harassment.[2] On July 9, 2015, a jury returned a verdict of guilty on all charges. The trial court ordered both a mental health and drug and alcohol evaluation. During a preliminary sentencing hearing conducted on September 22, 2015, Smith testified both he and his mother had been abused by the victim in the past, noting specifically that his kidney condition was the result of his father having thrown a television at him when he was three years old, and claiming the police had been called to the home several times. **See** N.T., 9/22/2015, at 25-26, 31-32, 38-39. Consequently, the court continued the hearing for the completion of a pre-sentencing investigation report ("PSI") in order to learn the "specifics" about the purported "violence within that household." **Id.** at 41.

A second sentencing hearing was held on December 14, 2015, at which time the court was provided with a detailed PSI.[3] At the conclusion of the hearing, the trial court sentenced Smith to a term of five to 10 years' imprisonment for the charge of aggravated assault. No further punishment

---

[2] **See** 18 Pa.C.S. §§ 2702(a)(1), 2701(a)(1), and 2709(a)(1), respectively.

[3] The probation/parole officer who completed the PSI spoke with the physician who treated Smith's nephrotic condition. The doctor stated Smith's condition was idiopathic, and was **not** caused by an injury. **See** Presentence Investigation, 12/7/2015, at 17-18. The officer was also able to confirm that police were called to Smith's home several times for domestic disturbances, several times when his father was listed as the victim and several times when his mother was listed as the victim. **See id.** at 12-13.

was imposed on the remaining convictions. Smith filed a timely petition for reconsideration of his sentence, asserting the sentence was excessive and imposed in the aggravated range of the guidelines despite his lack of a prior criminal record. **See** Petition for Reconsideration of Sentence, 12/17/2015, at 1. Following a hearing on January 19, 2016, the trial court denied Smith's petition. This timely appeal follows.[4]

Before we proceed to an examination of the issues raised on appeal, we note that Smith's appellate brief was filed late, despite having been granted two extensions of time. **See** Order, 7/26/2016; Order, 9/28/2016. Indeed, the second order explicitly stated: "NO further extensions will be granted absent extraordinary circumstances. Appellant's Brief shall be filed on or before October 31, 2016." Order, 9/28/2016. Subsequently, Smith filed his appellate brief on November 2, 2016.

Pennsylvania Rule of Appellate Procedure 2188 provides, in relevant part, that an appellee "may move for dismissal of the matter" when an appellant fails to file his brief in a timely manner. Pa.R.A.P. 2188. Here, however, the Commonwealth has not sought dismissal of the appeal or otherwise protested Smith's late filing. Absent an objection from the appellee, this Court has overlooked an appellant's "non-compliance with Rule

---

[4] On February 18, 2016, the trial court ordered Smith to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Smith complied with the court's directive, and filed a concise statement on March 10, 2016.

- 4 -

2185 pursuant to our discretion under Pa.R.A.P. 105(a)," and addressed the substantive claims on appeal. *AmerisourceBergen Corp. v. Does*, 81 A.3d 921, 923 (Pa. Super. 2013), *appeal denied*, 97 A.3d 742 (Pa. 2014). We likewise do so in the present case.

In his first issue, Smith contends the trial court failed to grant a mistrial when the Commonwealth elicited testimony regarding his post-arrest silence.

Our review of a trial court's ruling denying a defendant's motion for a mistrial is well-settled:

> The decision to declare a mistrial is within the sound discretion of the court and will not be reversed absent a "flagrant abuse of discretion." *Commonwealth v. Cottam*, 420 Pa.Super. 311, 616 A.2d 988, 997 (1992); *Commonwealth v. Gonzales*, 415 Pa.Super. 564, 609 A.2d 1368, 1370-71 (1992). A mistrial is an "extreme remedy ... [that] ... must be granted only when an incident is of such a nature that its unavoidable effect is to deprive defendant of a fair trial." *Commonwealth v. Vazquez*, 421 Pa.Super. 184, 617 A.2d 786, 787-88 (1992) (citing *Commonwealth v. Chestnut*, 511 Pa. 169, 512 A.2d 603 (Pa.1986), and *Commonwealth v. Brinkley*, 505 Pa. 442, 480 A.2d 980 (Pa.1984)).

*Commonwealth v. Manley*, 985 A.2d 256, 266 (Pa. Super. 2009) (quotation omitted), *appeal denied,* 996 A.2d 491 (Pa. 2010).

While a defendant may be questioned regarding his pre-arrest silence when he testifies in his own defense at trial,[5] "[i]n general, after a defendant

---

[5] *See Commonwealth v. Fischere*, 70 A.3d 1270, 1276 (Pa. Super. 2013), *appeal denied*, 83 A.3d 167 (Pa. 2013).

has been given *Miranda*[6] warnings, the defendant's post-arrest silence may not be used against him to impeach an explanation subsequently offered at trial." *Commonwealth v. Copenhefer*, 719 A.2d 242, 251 (Pa. 1998), *cert. denied*, 528 U.S. 830 (1999). Nevertheless, "where a prosecutor's reference to a defendant's silence is a fair response to a claim made by defendant or his counsel at trial, there is no violation of the Fifth Amendment privilege against self-incrimination." *Id.* (citation omitted).

Here, Smith testified that, on the night of the incident, he told the responding state trooper the victim kept a firearm in the garage. *See* N.T., 7/8/2015, at 241-242. He later clarified that he told this to the trooper "[b]oth on the deck [of the home] and in the squad car." *Id.* at 250. The next day, the Commonwealth recalled Pennsylvania State Trooper Guy Meltser and asked him, "When was the first time you heard anything about an alleged gun?" N.T., 7/9/2015, at 15. The trooper responded, "Yesterday." *Id.* The Commonwealth then asked Trooper Meltser if Smith said anything about a firearm when they were in the squad car, to which the trooper responded, "He did not." *Id.* Smith's counsel immediately objected and requested to approach the bench. *See id.* During the sidebar discussion that followed, counsel requested a mistrial, explaining: "The position of the defense is that [the trooper] is commenting on the

---

[6] *Miranda v. Arizona*, 384 U.S. 436 (1966).

defendant's right to remain silent." *Id.* at 16. The trial court overruled the objection finding that Smith had "opened the door" during his testimony. *Id.*

We find no reason to disturb the trial court's ruling. First, Smith's argument on this issue is lacking. He simply summarizes the parties' position on this issue, and cites to the Supreme Court's decision in *Copenhefer, supra*. *See* Smith's Brief at 9-10. However, in that case, the Court determined the defendant's rights were not violated when the Commonwealth referred to the defendant's, post-*Miranda*, invocation of silence as to some, but not all, of the questions posed to him by the police, after the defendant testified at trial that he had told them "Everything." *See Copenhefer, supra*, 719 A.2d at 251-252. The Court held "the prosecutor's comments were a 'fair response to a claim made by defendant or his counsel[.]'" *Id.* at 252. Smith fails to explain how the *Copenhefer* decision supports his claim for relief. *See* Pa.R.A.P. 2119(a) (requiring argument section in appellate brief include "such discussion and citation to authorities as deemed pertinent.").

Second, here, like in *Copenhefer*, the Commonwealth's subsequent questioning of Trooper Meltser was arguably a fair response to claim made by Smith. Indeed, Smith testified that he told the trooper about the victim's gun both before (on the deck) and after (in the squad car) he was arrested for the assault. The Commonwealth then recalled Trooper Meltser to rebut Smith's testimony on direct examination. As the *Copenhefer* Court

explained: "The protective shield of the Fifth Amendment may not be converted into a sword that cuts back on an area of legitimate inquiry and comment by the prosecutor on the relevant aspects of the defense case." **Copenhefer**, **supra**, 719 A.2d at 251.

Third, even if we were to determine that the reference to Smith's post-arrest silence was improper, we would find any error was harmless.

> "Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was de minimis; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict." **Commonwealth v. Robinson**, 554 Pa. 293, 721 A.2d 344, 350 (1999).

**Com. v. Hutchinson**, 811 A.2d 556, 561 (Pa. 2002), *cert. denied*, 540 U.S. 858 (2003).

Here, Smith testified that he told the responding state trooper, on two occasions, that the victim had a gun – while on the deck, before his arrest, and in the squad car, after his arrest. Accordingly, even if the Commonwealth's reference to Smith's post-arrest silence was improper, it was permitted to elicit testimony from Trooper Meltser that Smith did not tell the officers about the gun **before** his arrest, and his statement was identical. Any error, therefore, was so insignificant in light of the testimony as a whole, that it was harmless, and Smith is entitled to no relief on this claim.

Next, Smith challenges the discretionary aspects of his sentence. Specifically, he contends the aggravated range sentence imposed by the trial court was clearly unreasonable, particularly in light of the county sentence recommended in the PSI, and that the sentence was not supported by aggravated circumstances. **See** Smith's Brief at 12.

It is well-established that "[a] challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." **Commonwealth v. Hoch**, 936 A.2d 515, 518 (Pa. Super. 2007) (citation omitted). Here, Smith complied with the procedural requirements for this appeal by filing a timely post-sentence motion for modification of sentence and subsequent notice of appeal, and by including in his appellate brief a statement of reasons relied upon for appeal pursuant to **Commonwealth v. Tuladziecki**, 522 A.2d 17 (Pa. 1987), and Pa.R.A.P. 2119(f). **See Commonwealth v. Edwards**, 71 A.3d 323, 329-330 (Pa. Super. 2013), *appeal denied*, 81 A.3d 75 (Pa. 2013). Therefore, we must determine whether he raised a substantial question justifying our review.

A substantial question exists when an appellant sets forth "a colorable argument that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing process." **Commonwealth v. Ventura**, 975 A.2d

1128, 1133 (Pa. Super. 2009), *appeal denied*, 987 A.2d 161 (Pa. 2009) (citation omitted). In the present case, Smith's contention that the court imposed a clearly unreasonable aggravated range sentence, unsupported by sufficient aggravating circumstances, raises a substantial question that the sentence imposed was inconsistent with Section 9781(c)(2) of the Sentencing Guidelines.[7] **See** 42 Pa.C.S. § 9781(c)(2) (mandating a court vacate a sentence if it finds "the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable"); **Commonwealth v. Fullin**, 892 A.2d 843, 849-850 (Pa. Super. 2006) (allegation that, in imposing aggravated range sentence, court failed to consider mitigating factors and failed to place sufficient reasons on the record, raises substantial question).

Preliminarily, we note "[s]entencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." **Commonwealth v.**

---

[7] We note the Commonwealth asserts this claim is waived as a result of Smith's failure to include it in his concise statement. **See** Commonwealth's Brief at 18. While we agree Smith did not explicitly state his sentence was clearly unreasonable in his concise statement, he did assert the trial court "erred in imposing a sentence more severe than recommended by the Sentencing Guidelines" and "by rejecting the recommendation of Bucks County Adult Probation and Parole for a county sentence[.]" Statement of Matters Complained of on Appeal, 3/10/2016, at 1. Therefore, we decline to find this claim waived.

*McLaine*, 150 A.3d 70, 75 (Pa. Super. 2016) (quotation omitted). Here, the trial court provided substantial reasons on the record for the aggravated range sentence imposed:[8]

> There are some cases that are very easy and there are some cases that are not. This is not an easy case because there are so many things involved. The extent of the injury is obviously beyond serious. The number of surgeries that are required to correct what you did here caused additional trauma and pain and risk.
>
> At the same time, you have a household that is dysfunctional, to say the least. The dysfunction, however, is not one person. You seem to see this as a one person dysfunction, that being your father. There is at least three, if not five, depending on brothers, dysfunctional people in that house. Your mother is dysfunctional. If what you tell me is true, she allowed you to be abused. Or what you told me is not true, it's frightening.
>
> This should be easy. I should be able to see the pre-sentence investigation, take [the mental health] reports and say, "This is easy. He has never been involved in the criminal justice system before, I don't anticipate he will be involved again," and we all walk out of here and it's over. That's what should happen if you look at this just on paper.
>
> But you have no remorse whatsoever, none. You didn't have it that night and you don't have it now. You are still justifying what you did to him. You'd do it again. You'd do it tomorrow. Your reaction when the police responded was unbelievably cold. Your reaction, your statements to the pre-sentence investigator are unbelievably cold. You have no feeling for your father whatsoever. You have no remorse. You feel no empathy for what you did to him, none. And you don't now.

---

[8] The Sentencing Guidelines for Smith's crime called for a standard range sentence of 36 to 54 months' imprisonment, and an aggravated range sentence of 66 months. *See* Smith's Brief at 11. Therefore, Smith's sentence of five to 10 years' fell within the middle of the aggravated range.

I was really hoping you would stand up and say something like an act – and act like a human being, because I really wanted to put you in the County facility. But you are not acting like a human being. You are acting like a robot, all intellect and no emotion, one that feels justified in acting out whenever you feel like it because you are right and they are wrong and so, therefore, you are allowed to act.

Your statement that you should have killed him in any other context from any other defendant I would disregard that statement as emotional lashing out. But you are not responding emotionally. You are responding intellectually.

I don't know what is going on in that head of yours, but for you to stand in front of me and blame him for a medical illness, a medical illness, it's like blaming him for cancer. And what's frightening is you believe it. You will go to your grave believing he made you – he gave you this disease. You will be telling everybody for the rest of your life that this man gave you this disease. And he didn't and you know he didn't.

You are obsessed with him. And I don't – I don't understand it because you won't tell him. I don't understand your relationship with your mother. I don't understand your relationship with your brothers. I don't know why you have the relationship you do with your father. All I know is that it's made you hate him and hurt him without any sorrow or remorse or understanding or empathy or sympathy.

Taking into account the serious, serious, serious injury that you inflicted, your misrepresentations concerning your past, your misconduct and game playing in prison, you seem to be confused by that. Tattooing at the prison and lying about it is a game. You think this is some kind of chess game. If you do this and do that and do this and do that, "everybody will say it's okay and now I can go home."

You don't need anger management. You control your anger. You aren't out of control. You were perfectly controlled. You acted out of hatred. If this was – if you had any prior record at all, I would have given you [the] maximum sentence.

I will take into account that you have no prior record. I also take into account there is no basis or excuse or justification for what you did that night.

So, therefore, on [the charge of aggravated assault,] you shall undergo imprisonment for five to ten years.

* * * *

I note for the record that that is a sentence in the aggravated range of the guidelines. And as I said, the basis for that is – is the severity of the injury, the length and time, the time that he has had to undergo treatment. Your statements regarding killing him or misconduct in the prison, your blame, and your complete lack of remorse justified a sentence in the aggravated range.

N.T., 12/14/2015, at 14-19.

Our review of the record reveals no abuse of discretion on the part of the trial court. Indeed, the court conducted two sentencing hearings to ensure it had all pertinent information regarding Smith, his medical conditions, and his family history. The court's comments during the hearings reveal that it considered all the evidence presented by both the Commonwealth and Smith before concluding an aggravated range sentence was appropriate. Contrary to Smith's contention, the court did not ignore or disregard any of the information provided to it. **See** Smith's Brief at 15.

Further, during the reconsideration hearing, the Commonwealth provided the court with a taped telephone conversation between Smith and his mother, which had occurred on September 18, 2015, four days before his first sentencing hearing.[9] In addition to unfounded accusations by Smith

_____

[9] The recording was played for the court during the reconsideration hearing, and later transcribed and incorporated into the certified record. **See** N.T., 1/19/2016, at 24.

- 13 -

that the sentencing court was under federal investigation and that the victim had sexual intercourse with the prosecutor, the recording reflected Smith's anger toward his family and his failure to take responsibility for any of his actions. *See* N.T., 1/19/2016, at 33-34. As the court explained:

> [Smith] says anything without basis. He accuses people of outrageous and horrific conduct [without] regard for the emotion or reactions of other people. He has continued to demonstrate that he has no compassion for anybody else, anybody. It is – his sole focus I thought was on his father. His sole purpose is on himself. His failure, he had to blame on everybody else. …
>
> * * * *
>
> He made it more than clear that his mind is dominated by his hatred for his father, his hatred for his family. He says he hates his family more than anyone. His family destroyed his life. He takes no responsibility. No responsibility for his own abuse of drugs. No responsibility for his own abusive behavior. He has made it clear that he will hurt somebody when given the chance. He has made it clear in talking about his mother and his father that he does it because they take it, they tolerate it, and that means he does it because he can.
>
> The only way to prevent him from continuing this conduct is to remove him from – is to prevent him physically from being able to carry it out.

*Id.* at 33-35. Accordingly, because we find the trial court's rationale for imposing an aggravated range sentence is fully supported by the record, Smith is entitled to no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/6/2017